CITIZENS' BANK v. OBER. See Case No. 18,139.

CITIZENS' BANK OF LOUISIANA (CASE v.). See Case No. 2,489.

CITIZENS' BANK OF TOPEKA (FIRST NAT. BANK OF MANHATTAN v.). See Case No. 4,802.

———

## Case No. 2,732.

CITIZENS' NAT. BANK v. CASS et al.

[6 Reporter, 579; 18 N. B. R. 279; 6 Wkly. Notes Cas. 371; 19 Alb. Law J. 119; 26 Pittsb. Leg. J. 25.][1]

Circuit Court, W. D. Pennsylvania. Sept. 23, 1878.

BANKRUPTCY—BANKRUPT PARTNERSHIP—NONJOINDER OF PARTNERS—DEBTORS—CREDITORS—REMEDY OF CREDITORS—DISCHARGE.

1. Where a voluntary petition in bankruptcy has been filed, omitting the names of certain members of a firm, which it is asked shall be declared bankrupt, proceedings in invitum against the nonjoining partners can be had only on application of the petitioning debtors; a creditor cannot make such application.

2. The nonjoinder of any partner leaves the creditors in full possession of their remedies

———

[1] Reprinted from 6 Reporter, 579, by permission. 19 Alb. Law J. 119, contains only a partial report.]

against him, irrespective of the bankruptcy proceedings; and the omission of the names of partners in the petition may cause the court to refuse a discharge to the petitioners.

[Bill of review of the proceedings in the district court of the United States for the western district of Pennsylvania, in the matter of Harbaugh, Mathias, and Owens, bankrupts, upon the petition of the Citizens' National Bank, asking the joinder of additional alleged members of the firm as bankrupts. The facts are these: A petition in voluntary bankruptcy had been filed by Springer Harbaugh, David Mathias and Samuel T. Owens, claiming to constitute the partnership firm of Harbaugh, Mathias and Owens. A schedule of the assets and liabilities, as well of the individual members, as of the firm itself, was filed, and, in the ordinary course of proceedings, an adjudication was made, and an assignee appointed, to whom all the property, partnership and individual, of the petitioning debtors was conveyed.

[Nearly two years after the adjudication was made, a petition was filed by the Citizens' National Bank of Pittsburgh, alleging that they were creditors of the bankrupt firm, and had proved their claims against it to the amount of nearly $35,000; that the firm of Harbaugh, Mathias and Owens consisted in addition to the petitioning members, of George W. Cass, and the Cambria Iron Company; that all of the members of the firm, including Cass and the Iron Company, were general partners, though not ostensibly so, and that this general partnership existed, from about the first of January, 1870, until the filing of the petition in bankruptcy, which included the period during which the indebtedness to the petitioners was incurred. The petition further alleged that the indebtedness to them was allowed to be incurred upon the belief and representation that Cass and the Iron Company were general partners in the firm. It then set forth at length a number of transactions between Harbaugh, Mathias, Owens, the Iron Co., and Cass, as evidences of the existence of a general partnership between them, and prayed for an order directing Harbaugh, Mathias and Owens to amend their petition in bankruptcy, by including Cass and the Cambria Iron Company, as general partners in the firm, and directing the said Cass and the Cambria Iron Company to file their individual schedules in bankruptcy on or before a certain day, or, in default, that the assignee of the firm should file formal schedules in their respective names, unless, on or before a day certain, they should show cause to the contrary; all proceedings for the discharge of any of the said bankrupts in the mean while to be stayed. The district court refused the prayer of the petition, whereupon the petitioners filed the present bill of review.][2]

S. Schoyer, Jr., and George P. Hamilton, for complainants.

[McKENNAN, Circuit Judge. Strongly impressed as I am with the equity of the petitioners' contention, I have endeavored to reach a conclusion which might give effect to what seems to me to be the ultimate merits of the case, resulting from the true relations of the parties to each other. But the desired result can only be accomplished by an exercise of the appropriate jurisdiction of the court, within the limits, and in accordance with the spirit and object of the law which confers it.

[A voluntary petition was presented to the district court, for a discharge from their debts, by three persons, claiming to constitute a partnership, and as such to have contracted debts and acquired property. A schedule of these assets and debts, as well as of the individuals represented to compose the firm, was filed, an adjudication was made in due course, and an assignee duly appointed, to whom all the property of the petitioning debtors, partnership and separate, was conveyed. Nearly two years after this, the complainant in this bill, a creditor of the bankrupt firm, presented its petition to the district court, alleging that the firm consisted of the three petitioning debtors and the two respondents, and asking the court so to adjudge, and to order the joinder, in the bankruptcy proceeding, of the respondents with the other acknowledged members of the partnership. This the district court refused to do, and the question is whether this decision was right. I am of opinion that it was, and for the following reasons, which I am only able to state with great brevity.][3]

The unquestionable effect of the assignment was to vest in the assignee all the joint property of the petitioning partners, and to make it available for the payment of the firm creditors, so that the plain object of this proceeding is to subject the individual property of the respondent to the payment of partnership liabilities. But two methods are provided by the bankrupt law by which this can be done: 1. Upon the petition of one or more partners in trade in which one or more of the alleged partners refuse to join. 2. Upon the petition of the required number of the firm creditors, representing the required proportion of the partnership indebtedness. In the first it is essential that the names of all the members of the firm should be stated in the petition, because notice is required to be served upon those who refuse to join, to the end that they may make any available defence against the application. Rev. St. § 5121; General Order 18.

The primary object of the first mode is to secure to the petitioning bankrupts a dis-

---

[2][From 6 Wkly. Notes Cas. 371.]

[3][From 18 N. B. R. 279.]

charge from their debts. To this end the law requires a surrender of all the property of the bankrupts, and an honest disclosure of every material fact within their knowledge touching the nature of their indebtedness, as necessary conditions of their discharge. If they withhold in their petition the names of any of their copartners, they may defeat their application for a discharge; but it is not incumbent upon any of their creditors to supply the omission, nor can they do so, because in voluntary bankruptcy the law provides for a proceeding in invitum against nonjoining parties, only upon the promotion of their petitioning associates. Nor will such omission affect the rights of creditors against partners who are not parties to the proceeding. The law leaves them in the possession of all the remedies against parties not joined which they had before, while it may, as the penalty of bad faith, deny the fundamental object of the application. And the bankrupt court will in its discretion so control the proceedings as to protect firm creditors from embarrassment in the pursuit of their lawful remedies against recalcitrant partners.

In its initial features the second mode of proceeding differs from the first. Its object is to supersede the control of the bankrupt over the property, and to secure its appropriation to the payment of his debts. Hence, it is adversary to him, and can only be instituted by creditors, a certain proportion of whom, representing a certain proportion of the debtor's liabilities, must unite in the application. [In both modes of procedure, then, essential conditions must exist.][3] In a voluntary application the initiative must be taken by the debtor, and, in case of a partnership, by one or more of its members, at whose instance alone can other members who refuse to join be brought in. If any are excluded who ought to be joined, the court will refuse the petitioners the benefit of the act, and leave them and their associates [who refuse to join them][3] subject to all the remedies to which their creditors might resort, irrespective of the bankruptcy proceedings. But the court cannot aid a creditor in accomplishing by indirection a result which could only be reached directly by the observance of indispensable conditions. Bill dismissed.